FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 04, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TONY RAFAEL BAEZA-CRUZ, DAVID FILIBERTO DOMINGUEZ-KU, DIVEIN FERNANDO TOBON-MUNOZ, JOSE ARMANDO SULUB-CHAN, and JUAN CARLOS MIS-BALAM,<br><br>Defendants. | No. 2:19-CR-0075-JTR<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER |

**THIS MATTER** came before the Court on October 24 and October 28, 2019, for a joint bench trial of all five defendants on Count 1 of the Indictment, which alleged a violation of 8 U.S.C. § 1325(a)(1).

Defendants were not present and excused from attendance pursuant to FED. R. CRIM. P. 43. Each defendant was represented by counsel; Assistant Federal Defenders John Stephen Roberts, Jr., and J. Houston Goddard for defendant Tony Rafael Baeza-Cruz, Attorney Virginia Rockwood for defendant David Filiberto Dominguez-Ku, Attorney Richard Lynn Mount for defendant Divein Fernando Tobon-Munoz, Attorney Terrance Michael Ryan for defendant Jose Armando Sulub-Chan, and Peter Steven Schweda for defendant Juan Carlos Mis-Balam.

The United States was represented by Assistant United States Attorney Matthew F. Duggan through the first full day of trial. The United States was represented by Assistant United States Attorney Russell Smoot on the second and final day of trial.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 1

The Indictment is adequate to charge and does charge the completed crime of a knowing entry into the United States at a time and place not approved by immigration authorities and, alternatively, the crime of attempting to enter the United States with the specific intent to be free of official restraint.

On September 20, 2019, Count 2 of the indictment was dismissed on Defendants' motion. Count 3 of the indictment was severed and is scheduled for a jury trial before this Court on November 21, 2019.

Broadly, in Count 1 the United States alleges that during the late-night hours of April 4, 2019, the five defendants were initially observed on the Canadian side of the United States/Canadian border as they crossed a fence at the border and walked some 300 yards South into the United States. Defendants were contacted by uniformed agents of the United States Border Patrol, briefly queried, then taken to a nearby Border Patrol station for additional processing. The Indictment in question was returned on April 16, 2019.

Prior to trial, the parties argued, and the Court ruled on certain pretrial motions, notably Defendant's motion to suppress statements and to exclude certain documentary evidence. The Court granted the suppression motion, in part, permitting the admission in the United States' case-in-chief of the statements made by Defendants in the course of a "*Terry* stop" when initially contacted in the field by Border Patrol agents, but suppressing as violative of *Miranda* statements subsequently made during processing at the Border Patrol station. The Court also excluded photocopies of certain documents allegedly issued by foreign governments and seized from the person of Defendants.

At trial, the United States offered the testimony of United States Border Patrol Agents Ross Roley, Michael Egerton, Jorge Vasquez, Jeffery L. Prock, and Seth Justesen. Defendants presented the testimony of Federal Defender interpreter and investigator Maira Perez. The Court also admitted the United States' exhibit purporting to be defendant Tobon-Munoz' written waiver of his *Miranda* rights

and three defense exhibits purporting to be photographs of the area where Defendants crossed the border as it appeared in daylight at the time of trial.

Whereupon the Court makes the following:

# FINDINGS OF FACT

1. On April 5, 2019, sometime between 11:00 p.m. and 11:30 p.m., all five defendants, with a sixth person who is not on trial here, stepped over a three-strand barbed wire fence that ran generally contiguous with the United States/Canadian border. Defendants were on foot and proceeded directly south.

2. The fence was in imperfect repair, in some places being fewer than three strands and in some places completely absent. At the place where Defendants crossed, the fence was approximately "waist high." There were no signs or markers prohibiting entry or identifying an international border. The fence ran through orchards and fields and crossed a two-lane road that ran directly north from the United States and continued into Canada.

3. Border Patrol Agent Justenson testified that the place Defendant's entered the United States was not a point of entry designated by immigration officers.

4. Defendants were noticed by United States authorities before they crossed the fence and were continuously monitored from that point until they were apprehended approximately 20 minutes later.

5. Border patrol officers deployed to intercept Defendants. A marked vehicle with one uniformed agent moved to a position north of Defendants to prevent their return to the fence. A second marked vehicle containing two uniformed agents took a position in the anticipated path of the southbound walkers.

6. Agent Egerton was one of the agents in the vehicle that contacted Defendants as they approached. He testified all individuals were free to walk away at any time. Agent Egerton testified he contacted four individuals who were initially face down in the grass. They said they were from Mexico and did not

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER - 3

have documents permitting them to be in the United States.  They were arrested and placed in the agents' vehicle.

7. Agent Egerton was unsure of the names of the four he dealt with and could not describe their physical appearance.  His report did not note that the four individuals he spoke with had initially been lying in the grass.

8. Agent Egerton testified that conversations with Defendants were in Spanish and he had studied Spanish in high school and college and when he was trained as an agent, but that in matters of the Spanish language it was his practice to sometimes consult with another agent, named Prock.  In turn, Agent Prock described his own grasp of Spanish as "adequate" but acknowledged that at times he needed to consult in turn with Agent McIssac because McIssac was "fluent" in Spanish.  Agent McIssac was not present during these events.

9. Agent Egerton further testified that when he addressed the four individuals in the grass, he asked them where they were from and they responded "Mexico."  The responses from individual Defendants generally were unclear.  The actual words of the individuals accosted by Agent Egerton (as opposed to the agent's conclusion as to the statement's meaning) were not recalled by Agent Egerton or available to this Court to evaluate.  The specific person(s) making the statement(s) was not identified.  Agent Egerton further testified he learned the individuals' nationality later, by asking other agents during processing at the Border Patrol station.

10. Agent Vasquez testified he was the other agent in the vehicle with Agent Egerton and he questioned two individuals.  He said one named Tobon-Munoz was a resident of Canada and did not have documents permitting him to be in the United States.  Agent Vasquez specifically recalled Tobon-Munoz because he was taller than the rest, did not carry a backpack, and wore different clothes.  Agent Vasquez testified that his report did not mention anyone lying down in the grass.

11. Agent Prock testified that at the Border Patrol station he read *Miranda* rights to each Defendant. Agent Prock testified Defendant Tobon-Munoz waived his right to silence and answered questions, and Defendant Tobon-Munoz stated he was from Venezuela. The other defendants did not sign waivers of their right to silence.

12. Border Patrol Agent Justesen testified he queried two databases, "the Central Indexing System" and "Computer Linked Application Information Management System," and that neither system had a record of these defendants being legally in the United States or having made application to be legally in the United States. On cross-examination, Agent Justesen acknowledged these data bases were not maintained by the Border Patrol, but rather were maintained by Immigration and Customs Enforcement, for non-criminal purposes.

13. The Court takes judicial notice of a decision by the Central District of California, which exhaustively discussed the data bases used by ICE. *See Gonzales v. Immigration and Customs Enforcement*, 2019 WL 4734579 (C.D. Cal. Sept. 27, 2019) (holding the various data bases used by ICE are not sufficiently reliable, alone, to support probable cause to issue an ICE detainer).

14. The other circumstances surrounding Defendants' arrests include the lack of any signs warning or identifying the border or prohibiting crossing, and the fact that the fence was not unlike others crisscrossing the area. There is no evidence Defendants attempted to flee and inconsistent, if not minimal, evidence of Defendants' attempt to conceal themselves.

Upon the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. On April 5, 2019, all five Defendants crossed the border from Canada to the United States at a time and place not designated by immigration officers.

///

2. From the time prior to crossing the border into the United States, continuously through the time they were taken into custody by United States Border Patrol Officers, all Defendants were monitored by law enforcement and at no point "entered" the United States free from "official restraint" as those terms are contemplated by 8 U.S.C. § 1325(a)(1). *See United States v. Argueta-Rosales*, 819 F.3d 1149, 1158-1159 (9th Cir. 2016) (the term "entry" is a term of art requiring both physical presence in the United States and freedom from official restraint).

3. The Court finds all five Defendants **NOT GUILTY** of the crimes of "entering" the United States at a time and place not designated by immigration authorities as alleged in Count 1 of the Indictment.

4. The evidence surrounding Defendants' statements in the field is imprecise. The only other evidence of the alienage of Defendants BAEZA-CRUZ, DOMINGUEZ-KU, SULUB-CHAN, and MIS-BALAM is based upon the lack of information in data bases of questionable reliability and does not persuade the Court beyond a reasonable doubt of "alienage." Accordingly, the Court finds Defendants BAEZA-CRUZ, DOMINGUEZ-KU, SULUB-CHAN, and MIS-BALAM **NOT GUILTY** of being aliens attempting to enter the United States at a point not designated by immigration officials, as alleged in Count 1 of the Indictment.

5. Defendant TOBON-MUNOZ was clearly identified as the individual in the field who acknowledged to Agent Vasquez that he was not a U.S. citizen and did not have evidence or permission to be in the United States. After acknowledging his *Miranda* rights, Defendant TOBON-MUNOZ again indicated he was not a U.S. citizen and did not have authorization to be in the United States. Accordingly, the Court finds Defendant TOBON-MUNOZ **GUILTY** of the crime of attempting to enter the United States with the specific intent to be free of official restraint, in violation of 8 U.S.C. § 1325(a)(1), as alleged in Count 1 of the Indictment.

# ORDER

The parties shall have until the close of business on **November 15, 2019,** to file objections to these findings.  Orders regarding sentencing will be entered following the jury trial on Count 3, currently scheduled for November 23, 2019.

**IT IS SO ORDERED**.  The District Court Executive shall enter this order and furnish copies to counsel.

DATED November 4, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE